MAXWELL v. WILMINGTON DENTAL MFG. CO.

(Circuit Court, D. Delaware. February 17, 1900.)

No. 145.

RECEIVERS—ADVANCES—PRIORITIES.
Where some of the creditors of a corporation in the hands of a receiver advance money for the purpose of compromising a demand against the company and take the notes of the company for the money so advanced without an order of court authorizing the borrowing of money for such purpose, and without any undertaking on the part of the receiver that they shall be preferred creditors to the extent of the amount advanced, they are not entitled by reason of such advance to any priority of payment out of the assets.

(Syllabus by the Court.)

In Equity.

Wm. S. Hilles, for petitioner.

Robert D. Maxwell and Jas. H. Hoffecker, for receiver.

BRADFORD, District Judge. The matter now for determination by the court is presented by exceptions to the master's report disallow-

ing the petition of Abram E. Frantz filed in the case of Robert D.
Maxwell v. The Wilmington Dental Manufacturing Company, September 8, 1898. The dental company is a corporation of Delaware organized under the general incorporation act in 1882 for the manufacture of artificial teeth and dental goods and supplies. Its authorized capital stock amounted July 25, 1893, to $500,000, divided into shares of the par value of $100 each. A majority of the total capital stock had been issued for value and was outstanding at that time. On that day this court by virtue of proceedings had in the suit above mentioned adjudged the dental company insolvent and appointed as its receiver The Girard Life Insurance, Annuity and Trust Company of Philadelphia, a corporation of Pennsylvania. The trust company forthwith accepted the office of receiver, duly qualified July 27, 1893, and has from that time continued and now is such receiver. The decree appointing the receiver contains, among other things, the following clauses:

"Second. Said receiver shall forthwith enter upon and take possession of all and singular the said property, interests, things in action, effects, money, receipts, and earnings, privileges, franchises and immunities, and have and hold, use, operate, exercise, and enjoy the same, and operate and manage the manufactories of the defendant corporation with their appurtenances until further order of the court, obeying in all things the order of this court.

*      *      *      *      *      *      *      *      *      *

Sixth. The said receiver shall have power, until further order of the court, to enter into contracts for the product of the said manufactories of the corporation defendant, to manufacture such product, to make sales thereof, to make the necessary purchases, and to continue the operations until otherwise directed to the contrary."

On the petition of the receiver the late Judge Wales made a decretal order August 7, 1893, providing, among other things, that the receiver should have authority as follows:

"1. To co-operate with The Wilmington Dental Manufacturing Company, its president and directors, in securing renewals of the negotiable paper, promissory notes, bills of exchange, &c., on which said company is liable as maker or endorser, when and as the same shall mature, to the extent of paying interest thereon, in the form of discount on the renewals thereof, which said interest the said receivers shall pay out of their current earnings after providing for the payment of wages, supplies, purchases of goods, rent, taxes and interest on the mortgage bonds of the company.

2. To take up in whole or in part, as shall be deemed most advisable, such obligations of The Wilmington Dental Manufacturing Company as are secured by collateral of the said company, and thus redeem and possess themselves of such collateral, or as much as shall seem desirable, provided, however, that in such taking up and redemption the said receivers shall always obtain and get absolute and unincumbered possession of such collateral security to the full market value of the amount or amounts they shall pay for or on account of such securities and obligations.

3. To continue all branches of the business carried on by The Wilmington Dental Manufacturing Company at the time of the appointment of the receivers, as well the mercantile branch as the manufacturing branch, and for that purpose to pay the rents, as they shall become due, of the various premises used and that shall be used as branch stores or depots, to purchase all necessary supplies and goods for sale and re-sale, and to sell all goods, including those of its own manufacture and those that shall be bought for sale and re-sale, as well as all products and goods on hand, for cash or on such

credit, in no case to exceed six months, as to said receivers shall seem most advisable, and to allow such discount on the sale of all goods as has been the habit and custom of The Wilmington Dental Manufacturing Company in dealing with its creditors, so far as the same shall be deemed advisable by said receivers."

The petition on which the above order was made contained, among other things, the following:

"V. The assets of The Wilmington Dental Manufacturing Company, including bills and accounts receivable, amount to the best information and belief of your petitioners, at a very conservative appraisement made by The Wilmington Dental Manufacturing Company prior to the receivership to over six hundred thousand dollars ($600,000), while the total liabilities, including the bonded indebtedness of forty one thousand six hundred dollars ($41,600) secured by a mortgage, amounts to less than two hundred and twenty five thousand dollars ($225,000), and your petitioners fully believe that there is no reasonable probability that every debt of The Wilmington Dental Manufacturing Company will not ultimately be paid in full if the business can be carried on in the usual way."

The dental company November 10, 1891, being then indebted to H. M. B. Bary in the sum of $10,000 or more, made and delivered to him a promissory note for said sum bearing date that day and payable on demand to him or order. At the same time it caused to be delivered to Bary as collateral security for the payment of the note or other indebtedness of the dental company to him a certificate for 1,000 shares of its capital stock. This certificate had on the same day been issued without value to Henry C. Robinson, who was the treasurer of the dental company, in order that it should be used as such collateral, and was accordingly forthwith delivered to Bary together with a blank power of attorney for its transfer signed by Robinson. The note recited that the dental company had deposited with Bary "as collateral security for payment of this or any other liability or liabilities of ours to said H. M. B. Bary, due or to become due, or that may be hereafter contracted, the following property, viz.: one thousand shares of the capital stock of The Wilmington Dental Mfg. Co., the market value of which is now $100,000, with the right on the part of H. M. B. Bary to repledge the securities above mentioned, or to substitute and exchange for the same other certificates of like tenor and amount," &c., and authorized sale of the same in case of default. The dental company paid Bary March 26, 1892, $4,000 in reduction of the amount due on the note. At the time of the appointment of the receiver there was an indebtedness on the part of the dental company to Bary for platinum furnished by him to it for use in its business aggregating about $40,000. This indebtedness was represented by sundry promissory notes of the dental company held by him including the note of November 10, 1891, above mentioned. As collateral security for the payment of this indebtedness, or of certain parts of it, Bary held at the time of the appointment of the receiver the stock certificate for 1,000 shares and certain platinum and bills receivable of the dental company. At that time the Union National Bank of Wilmington, another creditor of the dental company, also held certain platinum belonging to the latter company as collateral security. Aft-

er the appointment of the receiver and before the making of the order of August 7, 1893, Bary brought suit in Philadelphia against the dental company to recover the amount of his claim and also threatened to sell the shares of stock for which he held the certificate as collateral. The petitioner, who owned 100 shares of the capital stock of the dental company, and sundry other of its stockholders, including Henry Tatnall, vice president of the receiver, desiring and contemplating a reorganization or rehabilitation of the company and an early termination of the receivership, and being apprehensive that continued litigation with Bary would defeat the end in view and prove detrimental to the interests of the stockholders and possibly of creditors, promptly sought to effect some compromise with Bary and thus remove what then seemed the principal, if not only, obstacle to the realization of their aim and expectation. With this end in view Tatnall and Bary during August and September, 1893, had a number of interviews in which an amicable adjustment of Bary's suit was discussed, with the result that Bary finally consented that on the receipt by him of a sum of money slightly in excess of $10,000 on account of his claim he would discontinue his suit and surrender to the dental company the stock certificate for 1,000 shares with the power of attorney accompanying it. The receiver, not having the requisite amount of cash on hand, and no specific order having been made by the court directing or authorizing the receiver to borrow money or pledge the assets of the dental company for the purpose of raising money to pay to Bary the sum demanded by him as the condition on which he offered to discontinue his suit and surrender the stock certificate and power of attorney, the petitioner and several other stockholders raised the requisite amount, of which the petitioner advanced or contributed $6,100. The money thus raised was deposited with The Girard Life Insurance, Annuity and Trust Company of Philadelphia and was by it through Tatnall paid to Bary, who surrendered the stock certificate and power of attorney to the dental company for cancellation, the same being canceled September 28, 1893, and subsequently discontinued his suit. For the moneys so received by the trust company it gave receipts to the several stockholders who had raised it, including the petitioner, according to the following form:

"Philadelphia, September 23, 1893.

Received from          his check No.          on          for          Dollars, to the order of The Girard Life Insurance, Annuity and Trust Company of Philadelphia, Trustee, to be held by the company as a contribution towards settlement with H. M. B. Bary in the purchase from him of notes of The Wilmington Dental Manufacturing Company to the amount of about ten thousand dollars and return by him of certificate for one thousand shares of stock of the said Wilmington Dental Manufacturing Company held by him with said notes, management of the transaction to be in the hands of Henry Tatnall, the notes purchased from the said H. M. B. Bary to be held for the benefit pro rata of the persons contributing to this fund.

The Girard Life Ins. Annuity & Trust Co.
of Philadelphia,
J. A. Harris, Jr.,
Asst. Treas."

On or about November 1, 1893, promissory notes of the dental company were made and delivered to the stockholders who had co-operated as above mentioned for the amounts they respectively had contributed or advanced. The note delivered to the petitioner bore date on that day and was for $6,100 payable in three months. Tat-nall sent it to the petitioner, together with a letter, as follows:

"November 1, 1893.

Dr. Abram E. Frantz,
    Wilmington, Delaware.
  Dear Sir,
        I am glad to be able to inform you that the notes aggregating a trifle over $10,000 of the Wilmington Dental Manufacturing Company which I purchased from Mr. H. M. B. Bary representing the syndicate which supplied the money for this purpose, have been withdrawn from his suit against the company. In fact I have negotiated with Mr. Bary for the withdrawal of his entire proceedings and his suit against the company was disdontinued yesterday, he having entered into an amicable arrangement for the renewal of all his notes. I therefore am in position to send to you the note of the Dental Company for the amount you contributed to the syndicate and herewith enclose note No. 216, dated this date for three months, to your order for $6100 and also the receiver's check to your order for $131.14 being interest on the $6100 from September 28 (the date I purchased the notes from Mr. Bary) to date and discount on the three months note.
                                        Respectfully,
                                    .    Henry Tatnall."

. · The notes thus given were renewed from time to time by the dental company. It having become evident that the assets of that company were insufficient to pay its creditors in full and the larger portion of the assets having been reduced to cash, the court, July 28, 1897, ordered that a dividend of 44 per cent. be made among the creditors. The receiver, treating the petitioner as a general or unsecured creditor, sent its check to him for his pro rata share of the dividend as follows:

"No. 101                              Philadelphia, 7/31 1897.
      The Girard Life Insurance, Annuity and Trust Company
                          of Philadelphia.

              Pay to the order of A. E. Frantz,
  Twenty eight hundred and ten...............$^{07}/_{100}$ Dollars.

      The Girard Life Insurance, Annuity |
        and Trust Company of Philadelphia, |    Distribution
        Receiver of the Wilmington Dental |      Account.
        Manufacturing Company.           |
                              A. A. Jackson,
      $2810.$^{07}/_{100}$              Treasurer for Receiver."

*First Distribution to creditors of The Wilmington Dental Manuf'g Co.*

*Payable in current bankable funds.*

The petitioner receipted for the amount of the check as follows:

"Received July 31st, 1897, from The Girard Life Insurance, Annuity and Trust Company of Philadelphia, Receiver of the Wilmington Dental Manufacturing Company, twenty eight hundred & ten $^{07}/_{100}$ dollars in accordance with a decree of the Circuit Court of the United States for the District of Delaware, and being a dividend of 44 per cent. of my claim of $6100 against said The Wilmington Dental Manufacturing Company together with interest upon the full amount of claim to January 1, 1897. ·
$2684.00    Dividend
  126.07    Interest.
----------
$2810.07                                        A. E. Frantz."

No protest or objection was made by the petitioner to the form or contents of the above dividend check or receipt. The petitioner wrote to the trust company July 8, 1898, as follows:

"Wilmington, Del., July 8, 1898.

Girard Life Ins. An. & Tr. Co.
  Gentlemen,
        I hold a $6100 (originally) note of the Wil. Dental Mfg. Co. Said note was sold to me by you with the guarantee of your company that it was & would be a preferred claim. I hold you liable for any deficiency which may occur in this transaction.

Very truly,
A. E. Frantz."

To this letter the petitioner received in August, 1898, the following reply from the counsel of the trust company:

"In re Wilmington Dental Mfg. Co. Receivership.

Philadelphia, August 23, 1898.

Dr. A. E. Frantz,
  504 Delaware Avenue,
    Wilmington, Del.
  Dear Sir:
        On my return to Phila. I have been consulted by Mr. Tatnall, the Vice President of The Girard Life Ins. Annuity & Trust Co. of Phila. as to your letter to the company of July 8th last, which letter he has handed to me. I am informed by Mr. Tatnall that neither he nor the Girard company, nor anyone on its behalf, gave you any guarantee or assurance, written or verbal, of any sort or kind, that the note of $6100 mentioned in your letter was or would be a preferred claim. I have advised the company, therefore, that it is under no liability whatsoever to you in respect of said note and beg to notify you to that effect.

Truly yours,
Geo. Tucker Bispham."

The petitioner filed his petition September 8, 1898, averring in substance, among other things, that shortly after the making of the decretal order of August 7, 1893, the receiver through its vice president informed the petitioner together with certain other persons that it had obtained such order and that an arrangement could be made with Bary "upon the payment to him of the sum of ten thousand dollars to secure a surrender from him of the said stock so held as collateral," and requested the petitioner and such other persons to furnish to the receiver the said sum of ten thousand dollars for that purpose assuring him that "as this was to pay a claim against the company which the said receiver was authorized to pay by the order of the said court, any sum paid by your petitioner, together with said other persons, would be a preferred claim against the assets of the said receivership, and be paid by it out of the assets coming into its hands at the time of the winding up of the said receivership"; that the petitioner, "relying upon said statements of the said receiver in connection with the order of the said court paid to the said receiver the sum of sixty one hundred dollars"; and that the receiver sent to the petitioner notes of the dental company representing the moneys so paid by him. The prayers of the petition are as follows:

"1. That the said receiver may be directed to pay to your petitioner in full the balance due him as aforesaid before payments are made to the general creditors of the said receivership, or

2. That your petitioner may be authorized to institute suit in this court upon the bond of the said receiver to recover the said balance."

The receiver in its answer denies that it, its vice president, or any person by its authority in any manner at any time directly or indirectly stated to or agreed with the petitioner or any other person that "any sum contributed by the petitioner or any other person to pay a claim against the defendant company, or to purchase any of the Bary notes or to effect a settlement with said Bary, would be a preferred claim against the assets of the defendant company, or would be paid in full out of the assets coming into the hands of the respondent at the time of the winding up of the receivership." It is averred in the answer, on the contrary, among other things, that shortly after the appointment of the receiver it was advised by counsel that the stock certificate for 1,000 shares which had been delivered to Bary as collateral, as above mentioned, had been irregularly issued; that the receiver represented to the petitioner, to his brother J. F. Frantz, the president of the dental company, and to other stockholders, the advisability of effecting such a settlement with Bary as would secure the surrender by him of the certificate of stock and the discontinuance of his suit against the dental company for the reason that the further prosecution of the suit would be detrimental to the business of the dental company as authorized to be carried on by the order of August 7, 1893, and for the further reason that should Bary transfer the stock to an innocent purchaser for value great injury would result to the dental company and its stockholders; "it being then believed by the respondent and many of the stockholders of the defendant company that the assets of the defendant company were more than sufficient to pay its debts"; that the petitioner and others "formed themselves into a syndicate or pool for the purpose of raising by their individual subscriptions the sum necessary to settle with said Bary and release said stock, and constituted Henry Tatnall their agent to manage said transaction"; that "it was agreed by the members of said syndicate that The Girard Life Insurance, Annuity and Trust Company of Philadelphia should act as an individual trustee to receive the subscriptions for this purpose, and that the management of the transaction with said Bary looking to the payment of said notes and the return by said Bary of the said stock should be in the hands of Henry Tatnall individually"; that in accordance with this agreement the money which was contributed or advanced for the above purpose was paid to the trust company as trustee and not as receiver; that the money so paid to the trust company as trustee was by Tatnall paid to Bary; that Tatnall, having notified the several persons, including the petitioner, who had raised the requisite sum, of the settlement with Bary, sent to them notes of the dental company in the several amounts they had respectively contributed; and that a condition of the settlement with Bary was that the several persons who had raised the money paid to him should not have a preference out of the

assets in the hands of the receiver, but were to be in the position of general or unsecured creditors of the dental company. The petition and answer having been referred to the master, voluminous evidence was adduced before him, and he has filed his report recommending that the petition be dismissed without costs. The petitioner has filed numerous exceptions to the report, some relating to findings of fact and others to conclusions of law. It is unnecessary to consider them in detail. The receiver also has excepted to the report on the ground that the master erred in not awarding all the costs against the petitioner. The master has found that the receiver did not in fact agree with the petitioner that he should have a preference on account of his contribution or advance of $6100 or in any manner undertake to create a preference therefor or authorize the president of the dental company or any other person to so agree or undertake. On this point a direct conflict is disclosed in the oral evidence. But the evidence taken as a whole sustains the conclusion of the master. The documentary as well as circumstantial evidence strongly corroborates Tatnall's testimony in this connection. He was and is the vice president of the receiver and its principal and controlling representative and agent in conducting the affairs of the receivership. He personally negotiated with Bary for his surrender of the certificate of stock and the discontinuance of his suit. His testimony is in full accord with the case as made in the answer of the receiver. He was in a position to know whether the receiver had in fact agreed or undertaken that the petitioner should have a preference. Some of the important facts tending to confirm his testimony may here be briefly adverted to. At and for many months after the date of the appointment of the receiver it was the general belief of those directly interested in the welfare of the dental company, shared as well by the petitioner as by the receiver, that the embarrassment of that company was only temporary; that its assets were far in excess of its liabilities; that the receivership was merely an expedient by which the company could be tided over its difficulties, and that no loss would result to its creditors or, indeed, to its stockholders or its business. The order of August 7, 1893, provided for co-operation by the receiver with the dental company in securing the renewal of negotiable paper on which the latter company was liable and for payment of discount on such renewal. The money contributed or advanced by the petitioner toward the settlement with Bary was paid to and receipted for by the trust company, not as receiver, but as trustee. The petitioner did not demand from the receiver a receiver's certificate or other obligation on its part for the repayment to him of the amount so paid to the trust company, but accepted without objection the promissory note of the dental company. This note was renewed from time to time, the last renewal note bearing date May 27, 1896. During the spring of that year, if not earlier, it became apparent that the affairs of the dental company were in such condition as to necessitate the winding up of its business and a distribution of its assets. An order was made June 6, 1896, that the receiver "shall within ninety days from the date hereof wind up the business of the said The Wilmington Dental Manufacturing Com-

pany and liquidate the claims of all the creditors of said company." An order had previously been made May 16, 1896, that the creditors of the dental company should be notified to prove and file their claims within sixty days. Pursuant to notice under the last mentioned order the petitioner filed his proof of claim July 3, 1896, but did not state or intimate in such proof that he was entitled to a preference. Prior to the order of July 28, 1897, for the dividend of forty four per cent., it was manifest that the assets of the dental company would prove insufficient to pay the claims of creditors in full. The petitioner receipted for his pro rata share without objection or suggestion that he was entitled to a preference or to be viewed in any other light than as a general or unsecured creditor. It was not until nearly a year thereafter, on July 8, 1898, that he claimed a preference over the unsecured creditors in his letter of that date to the trust company, which asserted preference was thereupon denied by that company. It is difficult, if not impossible, to reconcile the conduct of the petitioner with the existence of any original understanding on his part that he had or was to have a preference for the amount contributed or advanced by him. It is much more reasonable to conclude that believing in the sufficiency of the assets of the dental company to meet all its liabilities and anticipating an early termination of the receivership, after which the rehabilitated company would continue its extensive business, he, together with the other stockholders with whom he was co-operating to effect a compromise with Bary, relied, not on any preference out of the assets in the hands of the receiver, but on the supposed sufficiency of those assets to fully discharge all the liabilities of the company. Strongly corroborative of this view is the fact that the counsel of the receiver wrote September 20, 1893, to J. F. Frantz, brother of the petitioner, and president of the dental company, who took an active part in raising the money subsequently paid to Bary, as follows:

"In view of the present situation and after considering the subject thoroughly I would earnestly recommend the propriety of your going at once to Lancaster to see if your father cannot be induced to advance $5,000. If the Bary notes are assigned to him and the pool, in consideration of $10,000 being so raised, they will hold the obligations of the company, and are sure of being reimbursed their money with interest, unless it should transpire that the company's assets are not what they have been all along represented by its officials to be. I think it would be well to have Mr. Tatnall go with you if that can be so arranged."

The petitioner denies that he had knowledge of the contents of this letter and his brother states that he has no recollection of having received it. The fact, however, remains that the letter clearly disclosed an understanding on the part of the receiver in entire accord with its present position, and at variance with the contention of the petitioner. It is unnecessary further to pursue this branch of the case. I am satisfied with the finding of the master that the receiver did not in fact directly or indirectly agree or undertake that the petitioner should have a preference. But, if it be assumed that there was in fact such an agreement or understanding, the question arises whether it would have been operative to create a preference.

There are only two provisions in the orders of the court which can be conceived to lend any color to the contention by the petitioner that the receiver was authorized to prefer the former. One is to the effect that the receiver should have authority to continue the business of the dental company including the entering into contracts incident thereto, and the other to the effect that it should have authority to take up obligations of that company secured by collateral, thereby redeeming such collateral, provided the market value of the collateral so redeemed should at least be equal to the amount paid for or on account of such obligations. It is not necessary to go into the inquiry whether it would or would not have been competent for the court to authorize the receiver to borrow money or issue certificates or other obligations for the adjustment of the Bary suit and the surrender of the stock certificate. Assuming that the court had such power, the authority conferred on the receiver to continue the business of the dental company did not include the borrowing of money to secure the discontinuance of the Bary suit and the surrender of the stock certificate. The accomplishment of these ends was not included in the carrying on of the business as contemplated by the order. It was not involved in the purchase of supplies or materials for the purposes of the business nor within the implied powers of the receiver. The petitioner relies on the case of Cake v. Mohun, 164 U. S. 311, 17 Sup. Ct. 100, 41 L. Ed. 447, to support his contention. That case, however, is clearly distinguishable from this. There, it appeared that the receiver of "the furniture, equipments and other personal property" of a certain hotel had been expressly authorized by an order of court to "carry on and manage the business of keeping said hotel in substantially the same manner in which it has heretofore been carried on," and by a further order of court to "borrow, not to exceed $8000, for the purpose of paying the rent and other necessary and urgent debts incurred or to be incurred on account of the running expenses of the hotel." The court said:

"Admitting to its fullest extent the general proposition laid down by this court in Cowdrey v. Galveston, Houston, &c., Railroad, 93 U. S. 352, that a receiver has no authority, as such, to continue and carry on the business of which he is appointed receiver, there is a discretion on the part of the court to permit this to be done temporarily when the interests of the parties seem to require it. Under such circumstances, the power of the receiver to incur obligations for supplies and materials incidental to the business follows as a necessary incident to the receivership. * * * In view of the fact that the closing of the hotel, even temporarily, would have soon become known to its patrons, and would probably have been attended by a serious loss to the good-will of the business, we think the court did not exceed its authority in directing the receiver to keep it open during the pendency of the suit."

But Cake v. Mohun differs from this case in that there was an express order for the borrowing of money and the money so borrowed was to be used in defraying the ordinary expenses of the business. That case is not an authority for the petitioner. The provision authorizing the redemption of collateral by the receiver must be read in the light of the settled doctrine touching the borrowing of money by receivers. While the order provides for the re-

demption of collateral, it does not expressly authorize the borrowing of money for that purpose, and certainly did not by implication confer that power for the purpose of securing the surrender of stock of doubtful validity. But, as before stated, there was no undertaking in fact by the receiver to create a preference. It was nowhere provided in any order of the court that the payment of money by stockholders or others to secure the redemption of collateral should operate, without any agreement or undertaking on the part of the receiver to that effect, to create a preferred claim against the assets in the hands of the receiver, and especially if such payment should be made with the understanding that the persons making the same should rely, not on a preference, but on an unsecured claim. The facts of the case are such as to exclude any theory of a preference created or arising by or under implied contract or the equities disclosed. The petitioner as a stockholder had a substantial stake in the future welfare of the dental company and with others in like position believed that its welfare and entire solvency and an early termination of the receivership would be assured by an amicable adjustment with Bary. Entertaining this belief and having knowledge of the order of August 7, 1893, providing for the renewal of the notes of the dental company, he voluntarily paid $6100 and virtually succeeded to that extent to the rights of Bary, aside from collateral. But the petitioner has been disappointed in his expectations. The stock of the dental company is practically valueless, and its unsecured creditors on payment of the final dividend will not in any event have received more than fifty five or sixty per cent. of their claims. The loss incurred by the petitioner through his mistaken confidence was not in any manner caused by the other creditors and cannot equitably be visited on them. Nor should leave be granted to the petitioner to bring suit on the receiver's bond. The receiver did not undertake or consent that the petitioner should be preferred. While receiving the same treatment as other unsecured creditors the petitioner has no just cause of complaint. The report of the master, so far as it recommends the dismissal of the petition, must be confirmed. The court, however, is unable to adopt the recommendation of the master as to costs. The petitioner has failed to sustain his contention. His petition should have been filed, if at all, much earlier than it was. The proceedings thereon have delayed the making of a final dividend and the termination of the receivership, whereby considerable loss has resulted to creditors. A decree will be made dismissing the petition with costs, save as to the master's fee; one half of such fee to be taxed as costs against the petitioner and the other against the receiver.