## Sandy River Coal Co. v. Dutton, By, et al.

(Decided April 28, 1911.)

### Appeal from Johnson Circuit Court.

1. Personal Injury—Action for Damages—Error in Instruction.—In an action by an infant servant against his master for damages for personal injuries, it is error to submit the case to the jury on the theory of a failure on the part of the defendant to furnish plaintiff a reasonably safe place in which to work and reasonably safe tools and appliances, when there is no evidence that the place where plaintiff was employed was unsafe, or that the defect in tools or appliances was the proximate cause of plaintiff's injuries.

2. Infants—Failure to Warn and Instruct.—In such a case plaintiff's whole case in the absence of other evidence of negligence depends upon whether or not by reason of his youth or inexperience did not fully appreciate the dangers of the employment and if he did not, whether or not defendant so warned and instructed him fully to appreciate and understand the danger.

C. B. WHEELER, HAZELRIGG & HAZELRIGG for appellant.

VAUGHN, HOWES & HOWES, for appellees.

Opinion of the Court by William Rogers Clay, Commissioner—Reversing.

Appellee Elbert Dutton, an infant, suing by his father, as his next friend, brought this action against appellant Sandy River Coal Company to recover damages for personal injuries. The jury returned a verdict in his favor for $1,000. From the judgment based thereon, this appeal is prosecuted.

Briefly stated, the facts are as follows: Appellant operates a coal mine in Johnson county, Kentucky. Near the opening of the mine, which is upon the side of a hill, is a place for weighing coal. After the coal is weighed, it is lowered down an incline, where it is emptied into cars on a tram road. The incline has two tracks, on which monitors are run. The monitor is a small platform arranged on two large and two small wheels. The large wheels are located at the lower end of the platform, so as to keep it level. The monitors are operated by a wire rope running around a drum, and the rope is so attached that, as one monitor goes down the incline with loaded cars, it pulls the other monitor up the incline with empty cars. The wire rope is attached to the upper end of the monitors and runs from the monitors to the drum, over what are called sheave wheels. These wheels are placed under the edge of the platform at the upper end of the incline, there being one sheave wheel for each monitor. The wire rope is attached to the drum in such a way that, in operating the monitors, the rope from the one coming up the incline winds around the drum, while the rope attached to the one going down the incline unrolls from the drum. The purpose of the sheave wheel is to prevent the wire rope from dragging and also to cause it to wind uniformly around the drum. The sheave wheel runs on an axle several feet long, and, as the ropes coil around the drum, the sheave wheel moves along the axle. When the sheave wheel fails to move along the axle while the monitor is coming up the incline, the rope running over the wheel is made to lap or coil over itself on the drum, thus bringing the empty monitor to the top of the incline before the lower one reaches the lower end of the incline.

According to the evidence for appellee, the latter, at the time of his injuries, was fifteen years and four months of age. It was his duty to grease and oil coal cars, and place them in position to be lowered, and also

to shove and push empty cars from the monitor when brought up to the incline. It was likewise his duty to keep the sheave wheels in proper position, and do such other work as he was directed to do by the person operating the scales and drum wheel. Appellee, while admitting that the sheave wheel could be moved by a stick, and that one was furnished for that purpose, claims that he was directed to move the sheave wheel in any way that he could, and that he frequently used his hand for that purpose. It can not be gathered from appellee's evidence, exactly what position he was in at the time of his injuries. He was either on the platform or on the ground. About the middle of the axle on which the sheave wheel was located, there was a flat place, and also certain notches which caused the sheave wheel to stop sliding on the axle. When this occurred, the rope would begin to lap on the drum. Finding that the sheave wheel had stopped sliding, appellee claims that he placed his hand on the wire rope. He had on a glove at the time. His glove caught in the wire, and his hand was dragged over the sheave wheel. Three of his fingers were cut off, and the tendons in his arm badly injured. Appellee claims not to have been warned as to the dangers of the work in which he was engaged, and denies that appellant's foreman, or any of its employes, directed him not to place his hand upon the rope.

Appellant's evidence is to the effect that the only proper way to move the sheave wheel was by the use of a stick which was provided for that purpose, and then only when the rope was not running. Three or four of appellant's employes testified that they warned appellee not to put his hand on the rope. One of these warnings was given just a few minutes before appellee was injured.

Appellee based his right of recovery on the failure of appellant to furnish him a reasonably safe place in which to work, reasonably safe tools and appliances, and on the failure of appellant to warn and instruct him as to the dangers incident to the work in which he was engaged. The court submitted all three issues to the jury.

There is no evidence tending to show that the place where appellee was employed to work was not reasonably safe. While there is some evidence tending to show that the axle upon which the sheave wheel was running was defective in certain respects, appellee was not injured

because of such defects. All that can be claimed is that, by reason of the defective axle, the sheave wheel was made to stop. Whenever this occurred, it became the duty of appellee, according to his evidence, to start the wheel again. That being true, the defective axle was the occasion, and not the cause, of appellee's injuries; for, notwithstanding the defect in the axle, appellee would not have been injured had he not placed his hand upon the rope. The court, therefore, erred in submitting the case to the jury upon the theory of a failure to furnish either a reasonably safe place or reasonably safe tools and appliances.

Appellee's whole case depends upon whether or not he, by reason of his youth or inexperience, did not appreciate the danger of the work in which he was engaged, and whether or not appellant failed to warn and instruct him as to the danger. Upon this theory, alone, the case should have been submitted to the jury. Upon the next trial, the court will, in effect, tell the jury that, if they believe from the evidence that plaintiff, by reason of his youth or inexperience, did not appreciate the dangers incident to the work in which he was engaged, then it was the duty of defendant to warn and instruct him in such manner as would enable him fully to appreciate and understand the dangerous character of the work; and if it failed so to warn and instruct him, and that by reason thereof the plaintiff was injured, they should find for the plaintiff. On the other hand, if they believe from the evidence that the defendant did warn and instruct plaintiff in such manner as to enable him fully to appreciate and understand the dangers of the work in which he was engaged, they should find for the defendant. These two instructions, together with the instructions on contributory negligence and the measure of damages, given by the court upon the first trial, will fairly present the case to the jury, and none others will be given.

Judgment reversed and cause remanded for a new trial consistent with this opinion.