## COWDREY ET AL. *v.* GALVESTON, HOUSTON, AND HENDERSON RAILROAD COMPANY ET AL.

1. A receiver is not authorized, without the previous direction of the court, to incur any expenses on account of property in his hands, beyond what is absolutely essential to its preservation and use, as contemplated by his appointment. Accordingly, the expenditures of a receiver to defeat a proposed subsidy from a city, to aid in the construction of a railroad parallel with the one in his hands, were properly disallowed in the settlement of his final account, although such road, if constructed, might have diminished the future earnings of the road in his charge.
2. The earnings of a railroad in the hands of a receiver are chargeable with the value of goods lost in transportation, and with damages done to property during his management.
3. Where an attorney and counsellor-at-law, employed by trustees of certain mortgaged property to foreclose the mortgages, upon a stipulated retaining fee, entered upon such retainer, commenced the suit, prosecuted it until prevented by the outbreak of the civil war, and, after the termination of the war, offered to go on with the suit; but in the mean time, the trustees having died, a new suit was commenced and prosecuted, without his assistance, by the bondholders (for whose security the mortgages were executed), to foreclose the same mortgages, in which suit a receiver was appointed, — *Held*, that his claim for his fee was chargeable against the funds obtained by the receiver from the mortgaged property.

APPEAL from the Circuit Court of the United States for the Eastern District of Texas.

Submitted on printed arguments by *Mr. W. P. Ballinger* for the appellants, and by *Mr. R. T. Merrick* for the appellees.

MR. JUSTICE FIELD delivered the opinion of the court.

In February, 1867, a suit was commenced in the Circuit Court of the United States for the Eastern District of Texas, for the foreclosure of certain mortgages executed by the Galveston, Houston, and Henderson Railroad Company, a corporation created by the legislature of Texas, and the sale of the mortgaged property. The mortgages were adjudged valid by the court, and a sale of the mortgaged property was decreed. Subsequently, in 1869, by consent of the parties, Cowdrey, one of the complainants, was authorized to take the charge and management of the property, and act as receiver of the court. He accordingly qualified, and for some years acted as such receiver, superintending the management of the road of the

company until it was sold, and disposing, under direction of the court, of its earnings, and of the proceeds received when the sale was made. Reports of his proceedings were rendered from time to time to the court, and received its approval. His final report was filed in 1874, showing a balance of assets in his hands of $6,963.99; and the direction of the court as to its disposition was prayed. Exceptions to the allowance of the account being taken, the matter was referred to a master for his examination and report. The master refused to allow a credit for certain expenditures, incurred to defeat a subsidy from the city of Galveston to aid the construction of a road parallel with the one in the hands of the receiver. These expenditures amounted to $14,029.15, and this sum being added to the amount of the assets admitted to be in his hands, the receiver was charged with $20,993.14.

The master allowed certain sums against the company for goods lost in transportation, and damage done to property whilst the road was under the management of the receiver, amounting to $7,565.

The master also allowed a claim of John C. Bullitt, Esq., for professional services to the trustees in a previous attempt to foreclose the mortgages, the complete execution of which was prevented by the war. The claim was for $5,000, but the court in its decree reduced the amount to $2,500. The report of the master, modified as to this amount, was confirmed, and, by the decree of the court, the receiver was directed to pay the several amounts allowed, besides certain costs incurred, out of the proceeds in his hands, in preference to the balance due the complainants. From this decree the appeal is to this court.

The expenditures to defeat the subsidy proposed from the city of Galveston were properly disallowed. It was no part of the receiver's duty to interfere with the construction of a parallel line of railway, or to attempt to defeat any contemplated aid for such an enterprise. The proposed line may have been of great importance to the public and necessary to the prosperity of the city, though it might possibly diminish the future earnings of the company whose road was in his charge. At any rate, as an officer of the court, the receiver could not be allowed to determine the question of its importance, either to

the public or the company, and, acting upon such determination, to appropriate funds in his custody to aid or defeat the measure, without sanctioning a principle which would open the door to all sorts of abuses. A receiver is not authorized, without the previous direction of the court, to incur any expenses on account of property in his hands beyond what is absolutely essential to its preservation and use, as contemplated by his appointment.

The allowance for goods lost in transportation, and for damages done to property whilst the road was in the hands of the receiver, was properly made. The earnings received were as much chargeable with such loss and damage as they were chargeable with the ordinary expenses of managing the road. The bondholders were only entitled to what remained after charges of this kind, as well as the expenses incurred in their behalf, were paid.

The claim of the intervenor, Mr. Bullitt, for his professional services as an attorney and counsellor-at-law, was a meritorious one. He had been retained, in 1860, by the trustees to foreclose the first and second mortgages embraced in this suit, and was promised by them a retaining fee of $5,000. Upon his engagement he went from Philadelphia, the place of his residence, to Galveston, in the State of Texas, and there filed a bill in the Circuit Court of the United States to foreclose the mortgages, one of which was for $1,500,000, and the other for $750,000. Process was issued and served, and issue was taken in the suit by a demurrer to the bill. The further prosecution of the suit was prevented by the outbreak of the civil war, during which the records of the court were destroyed by fire, and the trustees died. Upon the close of the war, the intervenor took steps to continue the suit; and, while he was engaged in correspondence with the representatives of the trustees on the subject, the present suit was brought by Cowdrey and others, bondholders, without consultation with him, and without his assistance. Under these circumstances, there can be no reasonable doubt of the justice of the claim, or that it was properly allowed by the master. Of its subsequent reduction to one-half he does not complain, not having excepted to the decree in this particular, or appealed from it to this court.

The fact that the retainer was by the trustees in the mortgages, who have since died, and that the present suit was prosecuted by the bondholders, the *cestuis que trust*, does not affect the position of the claim.   The trustees, had they lived, would have been entitled to retain out of the funds received by them sufficient to meet the claim.   They would have had an equitable right not merely to be reimbursed from such funds all reasonable expenses incurred, but also to retain from the funds sufficient to meet all reasonable liability contracted in the execution of their trust.   From the time of the employment of the intervenor, the funds derived from the mortgaged property were chargeable with the liability consequent upon the retainer; and it matters not whether those funds were obtained by the trustees, or, in consequence of their death or of the action of the court, by other parties having charge of the property.

*Decree affirmed.*