## DANIELS v. ST. LOUIS & S. F. R. CO.

No. 1542.    Opinion Filed March 19, 1912.

Rehearing Denied December 24, 1912.

(128 Pac. 1089.)

1.     RAILROADS—Construction—Dangerous Premises—Death of Animals. Two horses died from having mired down in a borrow pit excavated by the railroad company that built the road and from which the defendant company purchased it. The borrow pit was more than 50 but within 100 feet of the railroad track, within plaintiff's field, but outside of the railroad fence, which was built on the 50-foot line. It contained water from a few inches to nearly three feet in depth. There was no proof that the defendant company knew it was boggy. **Held,** that the defendant was not liable for the death of the horses.

2.     NUISANCE — Dangerous Premises — Liability of Purchaser — Abatement. Before a purchaser can be held liable for a nuisance created by his grantor, he must be notified of its existence and requested to abate it, or he must use it or take some active step to continue it.

3.     RAILROADS—Transfer—Torts of Original Company. Where an original constructing railroad company sold its line to defendant, it could not be presumed, in the absence of express proof, that the constructing company was only the agent of defendant for building purposes so as to render defendant liable for its torts.

(Syllabus by Rosser, C.)

*Error from District Court, Noble County;*
*W. M. Bowles, Judge.*

Action by Allen Daniels against the St. Louis & San Francisco Railroad Company. Judgment for defendant, and plaintiff brings error. Affirmed.

*Henry S. Johnston,* for plaintiff in error.

*W. F. Evans, R. A. Kleinschmidt,* and *Fred E. Suits,* for defendant in error.

Opinion by ROSSER, C. This case is brought here on petition in error and case-made from the district court of Noble county. At the close of the plaintiff's testimony, the trial court directed a verdict for the defendant. This suit was brought to recover for the loss of two horses, occasioned by their having been mired down in a bog in a borrow pit made while the road, now owned and operated by the defendant, was being built. The proof shows that the road, at the place where the horses were mired down, was built by the Arkansas Valley & Western Railroad Company, and in building the road the contractors went outside of the 50-foot right of way, which was usually necessary for a road, and used dirt from borrow pits 80 or 90 feet from the railroad track, but within 100 feet of the railroad track, and it was in one of these borrow pits, less than 100 and more than 50 feet from the railroad track, that the horses were mired down. After the right of way was built, the Arkansas Valley & Western Railroad Company seems to have vanished; at least, as it appears from the record, it has so far disappeared that it is impossible to obtain service upon it or to ascertain its whereabouts. Before its disappearance, however, it sold its road to the defendant. The road was fenced some time after it was built; but the record does not disclose whether it was fenced by the Arkansas Valley & Western or the defendant. The fence was run along a line 50 feet from the railroad track, and did not inclose the borrow pit where the horses were mired down. The pit was left uninclosed by the right of way fence, but was within the inclosure of the plaintiff. Water stood in it; but the plaintiff did not know of its boggy character, and there is nothing in the record to show that any one else knew. The claim of plaintiff, in effect, is that the borrow pit, where the horses mired, was a nuisance, and that the defendant is liable for maintaining the nuisance, and that

by its purchase of the road from the Arkansas Valley & Western Railroad Company it became responsible for all damages caused by the building of the road.

Each party devotes considerable argument to the question of whether or not the borrow pit was ever on the right of way, and whether, if it was ever on the right of way, it had been abandoned. It is not necessary to decide these questions.

It is assumed or considered as one of the facts of the case by all the parties that the Arkansas Valley & Western Railroad Company built the road and sold it to the defendant. It is contended by plaintiff that it was only the agent of the defendant company for building purposes, and that the defendant is liable for its acts. But there is no proof to sustain this contention, and this court cannot presume that such is the fact without proof. If such is the fact, it is capable of proof, and the fact that it is troublesome and expensive to get the proof does not relieve plaintiff from the burden of producing it. The mere fact that some of the first passenger trains that were run over the road bore the name of "Frisco" on the engines and cars was not sufficient evidence to overcome the allegations and proof that the road was built by the Arkansas Valley & Western Railroad Company.

The defendant company purchased the road from the Arkansas Valley & Western Railroad Company after the borrow pit was dug. The law is that where real estate is bought after a nuisance, such as the borrow pit is claimed to have been, is created, the purchaser cannot be held liable for damages occasioned by the nuisance until his attention has been called to it and he has been asked to abate it. The rule is different where the purchaser uses or repairs the nuisance. But in cases of mere passive nuisance the purchaser must be notified. He has a right to presume that his grantor was in the lawful use of his land, and cannot be held liable for allowing things to remain as they are until notice is brought to him. *Johnson v. Lewis,* 13 Conn. 303, 33 Am. Dec. 405; *Croff v. Ankenbrandt,* 124 Ill. 51, 15 N. E. 40, 7 Am. St. Rep. 342; *West v. L. C. & L. R. Co.,* 8 Bush (Ky.) 404; *Woodman v. Tufts,* 9 N. H. 88; *Pillsbury v. Moore,*

Daniels v. St. Louis & S. F. R. Co.

44 Me. 154, 69 Am. Dec. 91; *Nichols v. Boston,* 98 Mass. 39, 93 Am. Dec. 132; *Grigsby v. Water Works Co.,* 40 Cal. 396.

In the case of *Wenslick v. McCotter,* 87 N. Y. 122, 41 Am. Rep. 358, the defendant's grantor built two houses with a leader between the two conducting the water from the roof of the veranda, extending along the front of both. Defendant purchased one of the houses, and altered the roof so that no water ran from it through the leader. Water from the other house ran through the leader as it extended out practically, if not entirely, across defendant's line, and flowed onto the sidewalk, where it froze. It was held that the defendant was not liable for merely suffering the pipe to remain, doing nothing to it and in no way using it. Mr. Danforth, Justice, said:

"Nor can the plaintiff's case be made upon the ground that the defendant caused the obstruction. As he neither erected the pipe nor used it, at no time intermeddling with it in any way, or being benefited by it, the most that can be said is that he did not tear it up or remove it. If it is a nuisance, it was placed there before he acquired title to his house, and his position is not unlike that of the owner of land upon which a third party should wrongfully enter and erect a nuisance. In such a case the owner would not be liable either for the erection of the nuisance or its continuance, until he was requested to abate it. If he used or repaired it, the case would be different, for thus he would become an active participant in the wrong. It is sometimes said to be enough to charge a defendant that, having acquired title to land after the nuisance was erected, he has continued it. But this must be taken to mean more than an omission to abate or remove it, something amounting to actual use. As, if the defendant simply suffer a dam erected upon his land by a former owner to remain, without being used by him, it is no continuance of the nuisance, unless he is first requested to remove it. *Pierson v. Glean,* 14 N. J. Law, 36 [25 Am. Dec. 497]; *Morris Canal, etc., Co. v. Ryerson,* 27 N. J. Law, 457, 469."

See *Wasmer v. D.. L. & W. R. Co.,* 80 N. Y. 212, 36 Am. Rep. 608, in which case, although there was a judgment against the company, the principle was announced that to make a lessee of a road liable for a nuisance it must knowingly maintain it.

In *Peoria & P. W. R. Co. v. Barton,* 38 Ill. App. 469, it was held that a company purchasing a railroad after the building

of a bridge thereon was not liable in damages to the landowner, caused by the defective manner in which the bridge was built, without previous notice to the company of its defective character, or the request to make changes in it. See, also, *Central Trust Co. v. Wabash, St. L. & P. R. Co.* (C. C.) 57 Fed. 441.

In this case the defendant company had not used the borrow pit, and, so far as the proof shows, had no notice of its dangerous character, or that it constituted a nuisance. A borrow pit, in which water stands to a depth of two or three feet, as the proof shows it did in this one, is not a nuisance *per se,* and was not notice to the company, or to any one else, that it was of a dangerous character. The defendant, being the purchaser from the company which made the excavation, and having no notice, as appears from the proof, of its dangerous character, is not responsible for damages caused by its existence, even though it is on its right of way. And it is not necessary to determine whether it is on the right of way or not.

It follows therefore that the judgment of the lower court should be affirmed.

By the Court: It is so ordered.