### Judd's Administratrix v. Southern Railway Company.

(Decided October 31, 1916.)

### Appeal from Shelby Circuit Court.

1.   Master and Servant—Defective Condition of Engine—Not Proximate Cause of Injury.—The defective condition of a locomotive

engine held not to be the proximate cause of an injury to the engineer who stopped his engine out in the country, between stations, to make necessary repairs and slipped and fell on ice upon the ground at the place, no necessity for stopping at such place having. been shown.

2. Master and Servant—Assumption of Risk.—A locomotive engineer assumes the risk of such injuries as result from ice being .on a railroad company's right of way in this latitude in February out in the country between stations, where the injury does not follow in ordinary, natural and unbroken sequence a negligent act of the company.

ROBERT B. FRANKLIN, R. C. TALBOTT and RALPH GILBERT for appellant.

WILLIS, TODD & BOND, HUMPHREY, MIDDLETON & HUMPHREY and HORACE L. WALKER for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

This is an action by appellant to recover damages of appellee on account of the death of plaintiff's intestate, Alfred M. Judd. The lower court sustained a general demurrer to the petition, and appellant declining to plead further, judgment was rendered dismissing the petition, from which judgment this appeal is prosecuted.

Excluding formal parts, the material allegations of the petition are as follows:

"That on and before February 25th, 1914, the decedent was in the employ of the defendant as steam.locomotive engineer on defendant's railroad, and on or about the 25th day of February, 1914, was directed by the defendant, in the capacity of locomotive engineer thereon, to conduct and convey one of its trains of passenger cars from Louisville, Kentucky, over defendant's road to Lexington, Kentucky; that the defendant furnished him, as its servant, a steam locomotive engine and tender and. their connections for said purpose, and that the decedent, as engineer, took charge thereof and undertook to run said engine and tender and haul said train, and that the decedent was, by the defendant, required, while acting as engineer thereof, to run said engine and tender and to keep them and their connections in repair and running order while out on defendant's road, so they would run and haul defendant's train on said occasion; that on said occasion when decedent was directed to run said engine and tender and their connections on said trip, as aforesaid, the weather was cold and there was ice here and

there at different points on defendant's tracks. The plaintiff states that the defendant failed to exercise ordinary care to furnish, and did not furnish, the decedent with an engine and tender and their connections, fit and suited for the purpose stated, and that the defendant knew, or by the exercise of ordinary care could have known, that the weather was cold and that there was ice on its tracks here and there and at different places on its tracks and that said places were not reasonably safe and suited to repair, or work on, said engine and tender and their connections, and that the said engine and tender and their connections were not reasonably fit and suited for said trip and that they might fail or cease to work, and need repairing, at any point on its road, including the point where there was ice on defendant's road, and where it was not a safe or suitable place to repair or work on said engine and tender and their connections; and the plaintiff states that the said engine, and tender and their connections, did, on defendant's road, at one or more points, and at a point in Shelby county, Kentucky, fail or cease to properly work so that the train could not proceed without the decedent working on and repairing said engine and tender and their connections, at said point on defendant's road, and that the defendant accordingly, in ordering the decedent to go out on said trip with said engine and tender and their connections, unsuited and unfit for said purpose, failed to exercise ordinary care to see to it that the decedent would have a place reasonably safe and suited to do the work required of him, to repair and keep in running order said engine and tender and their connections, and accordingly failed to exercise ordinary care to furnish him a place reasonably safe and suited to work on and repair said engine and tender and their connections; and the plaintiff states that the decedent at said point in Shelby county, on defendant's track, where defendant's engine and tender and their connections failed to properly work, and required attention from the decedent and repairing by him, undertook in the discharge of his duties, to work on and repair said engine and tender and their connections, and that while he was engaged in the discharge of his duty, to work on and repair said engine and tender and their connections, and while he was exercising ordinary care for his own safety, the decedent's foot slipped on said ice on defendant's

track and caused him to fall, which fall injured the decedent, from which injury he shortly thereafter died.

"The plaintiff states that the decedent, when he undertook to obey the defendant's orders to haul and carry said train over said road, did not know that said engine and tender and their connections were unfit and unsuited for that purpose, and when, at the point aforesaid, in Shelby county, Kentucky, defendant's engine and tender and their connections failed to properly work, and needed attention by the decedent and repairing by the decedent, the danger of undertaking to repair and put said engine and tender and their connections in working order, at said point on defendant's track, was not obvious to decedent, and that he did not know that said place was not reasonably safe and suited to undertake to repair or put in working order said engine and tender and their connections.

"The plaintiff states that the decedent received his injuries in Shelby county, Kentucky; that said injuries resulted in his death, and that his said injuries and death were directly caused and brought about by and through the negligence of the defendant, to plaintiff's damage in the sum of thirty-five thousand dollars ($35,000.00), no part of which has been paid."

As stated by counsel for appellant in brief the negligence complained of in the petition consists, "first, of failure to exercise ordinary care to furnish the plaintiff with an engine and tender fit and suited for the purpose intended; second, that the defendant failed to exercise ordinary care to furnish him a place reasonably safe and suited to work on and repair said engine and tender."

1. Let us now examine the petition to ascertain whether or not it states a cause of action upon either of these alleged negligent acts of appellee. It will be noticed that with reference to the first alleged act of negligence, namely: the failure to exercise ordinary care to furnish a suitable engine and tender, the plaintiff alleges that the engine and tender were unfit and unsuitable; that this condition was known, or by the exercise of ordinary care could have been known, by appellee, and while the petition states that decedent did not know that said engine and tender and their connections were unfit and unsuitable for the purpose for which he was to use them, it does not say that condition was not obvious

or could not have been discovered by him by the exercise of ordinary care. In fact, we doubt if appellant could have made consistently that allegation in view of her statement that it was not only decedent's duty to run the engine, but it was also his duty to keep it in repair in reference to the parts in which she complains it was defective, because it would seem the duty to keep in repair imposed upon him the same obligation to know of these defects that the duty to furnish imposed upon the appellee. But, however, that may be, the petition must be construed most strongly against appellant, and as it does not state the alleged defects in the engine were not obvious, nor that decedent could not have discovered them by the exercise of ordinary care, it must be assumed they were obvious and could have been discovered by the decedent by the exercise of ordinary care before he started out on the trip with the engine, or at least at some place suitable for such work as was necessary to keep the engine in running order.

As stated in Benedict Pineapple Co. v. Atlantic C. L. R. Co., 55 Fla. 514, 20 L. R. A. (N. S.) 92, upon which appellant relies to sustain her contention:

"Negligence is a proximate cause of an injury when in ordinary, natural sequence it causes, or contributes to causing the injury without an intervening independent cause.

"The negligent act or omission for which a party is liable in damages is one that proximately, i. e., in ordinary, natural sequence, causes, or contributes to causing, an injury to another, where no independent efficient cause of the injury intervenes, and the injured party is not at fault.

"A negligent act or omission may be the proximate cause of injury, whether such injury necessarily or immediately follows the negligence or not, if the negligence is in ordinary, natural, unbroken sequence the cause of the injury. Shearm. & Redf. Neg., Section 26; Milwaukee & St. P. R. Co. v. Kellogg, 94 U. S. 469, 24 L. ed. 256.

"Liability for negligence extends to all its natural, probable, and ordinary results. Any injury that, under the circumstances, is the natural, probable, and ordinary result of a negligent act or omission is in law held to have been contemplated by the negligent party as a probable and proximate result of the negligence, when he is informed, or by ordinary observation would have been

informed, of the facts and circumstances attending the negligence.

"Results that follow in ordinary, natural, continuous sequence from a negligent act or omission, and are not produced by an independent, efficient cause, are proximate results of the negligence, and for such results the negligent party is liable in damages, even though the particular results that did follow were not foreseen.

"Where the injury is caused by the intervention of an independent, efficient cause to which the defendant did not contribute and for which he is not responsible, or is caused by the act or omission of the plaintiff, the negligence of the defendant is not the proximate cause of the injury. If the plaintiff contributes proximately to causing the injury, he cannot recover, unless otherwise provided by statute.

"The ordinary conditions or forces of nature, such as ordinary wind, cold, heat, and the like, that are usual at the time and place and under the circumstances, and that reasonably should have been expected or foreseen as probable to occur, are not, in general, independent, efficient causes, when they affect or operate upon a negligent act or omission in causing a result. Those who are negligent are held in law to know the usual effect of ordinary natural conditions and forces upon a negligent act or omission, and have contemplated the appearance and the effect of such conditions and forces upon their negligence or upon its proximate results, and to be liable in damages for the natural and probable proximate results of the negligence. 13 Am. & Eng. Enc. Law, 2d ed. 457 *et seq;* 1 Thomp. Neg. 136; Wharton Neg., Sec. 97."

The other cases cited for appellant, including the following Kentucky cases: Beiser v. C., N. O. & T. P. R. Co., 152 Ky. 522; Snyder v. Arnold, 28 Ky. L. R. 1250; Watson v. K. & I. Bridge Co., 137 Ky. 619; Brown v. C. & O. Ry. Co., 135 Ky. 798; City of Louisville v. Johnson, 24 K. L. R. 685; fully sustain the principles announced in the Benedict Pineapple Co. case, *supra,* and all of those principles we recognize and endorse, but we are unable to see their applicability to the facts of this case. As above pointed out it was the duty of appellee to furnish a suitable and fit engine which upon demurrer it is assumed it negligently failed to do, as alleged in the petition. It was decedent's duty to make necessary and

reasonable repairs to keep the engine going which he did not do until it failed to work at all at a place out in the country. Can it be said that decedent's injuries received from the condition of the place where this work was attempted to be done, rather than the defective condition of the engine followed "in ordinary, natural and unbroken sequence" from the negligence of the master, or did they follow "in ordinary natural and unbroken sequence" from the selection by decedent of an unusual and improper place to do the work he could and ought to have done elsewhere?

It is only upon assuming that he did not know and could not have known in the exercise of ordinary care of the defects that there is any reason shown for his stopping the train, or letting it stop, and attempting to make the repairs out in the country where he was bound to know there would probably be ice at that time of the year. And the courts certainly will not assume that it was his duty to make such repairs at such a place except upon necessity, or under extraordinary circumstances. The petition having stated it was his duty to keep the engine in repair, it must follow it was his duty to make necessary repairs seasonably and in a suitable place and not to do so at an unusual place known by him to be dangerous, except in an emergency or upon necessity. The petition having failed to disclose any necessity for decedent's selection of this place for the work, appellee cannot be held to have been required to anticipate such a selection, or to make such a place safe for that work, and the injury did not result "in ordinary, natural and unbroken sequence" from the negligence of the master without fault of the injured servant. It therefore results that the master's negligence was not the proximate cause of the injury, in fact did not even, "in ordinary, natural and unbroken sequence," furnish an occasion therefor, under the allegations of the petition; and that the petition did not state a cause of action against appellee upon which appellant could recover for the alleged defect in the instrumentality furnished him with which to do his work.

The following authorities: L. & N. R. Co. v. Keiffer, 132 Ky. 419; Logan v. C., N. O. & T. P. Ry. Co., 139 Ky. 202; City of Lawrenceburg v. Lay, 149 Ky. 490; Sandy River Coal Co. v. Dutton, 143 Ky. 411; Setter's Admr. v. City of Maysville, 114 Ky. 60; Burton v. Cumberland

Tel. & Tel. Co., 118 S. W. 287; Georgetown Tel. Co. v. McCullough's Admr., 118 Ky. 182, 29 Cyc. 492; state the principles applicable to the facts of this case, rather than those relied upon by appellant.

2. The other alleged negligent act upon which appellant attempted to base a right of recovery was the failure to furnish decedent a reasonably safe place in which to do his work. The petition alleges that appellee knew, or by the exercise of ordinary care could have known, that the weather was cold, and that there was ice on its tracks here and there and at different places along its tracks, and that said places were not reasonably safe and suited to repair and work on said engine and tender and their connections; that the danger of undertaking to repair said engine and tender on appellee's tracks was not obvious to decedent, and that he did not know that said place was not reasonably safe and suited to undertake to repair and put in working order said engine and tender and their connections.

This accident occurred in February, and the employer must have known and anticipated that upon its right of way, in the county, in this latitude, at that time of year, ice would be here and there and at different places along its tracks as alleged in the petition; but must not decedent also be conclusively presumed to have known of and anticipated this same condition which is a common physical fact within the ordinary knowledge of all men, and can he be heard to say that he did not know of this condition as well as the employer? We think not. The rule of law that compels an employer to take knowledge of and anticipate ordinary physical laws and conditions in connection with his business, is equally as imperative upon the employe in the discharge of his duties under his employment, and such risks as are incident to such conditions are necessarily assumed by the employe in accepting the employment. That this is true is too well established to require argument to support it, and we shall merely cite the following authorities in which, upon analogous facts, the rule has been applied. O'Bannon's Admr. v. L. & N. R. Co., 9 K. L. R. 706; Piquegno v. Chicago & G. T. R. Co., 52 Mich. 40; Fay v. C. St. P. M. & O. Ry. Co., 72 Minn. 192; American Tobacco Co. v. Adams, 137 Ky. 414. Moreover the petition does not show that the place where the work was being done by decedent was provided by appellee for such work, and

his use of that place for the purpose must have been shown to have been necessary or at least reasonable under the circumstances, or such as appellant in the ordinary course of the employment was bound to anticipate, which does not appear from the petition. Upon the other hand common experience and common knowledge forbid the assumption that such a place was provided or ought to have been prepared by the employer for such work under the circumstances here.

Appellant's contention upon this point if sustained would impose upon railroad companies not only the duty of furnishing its operating employes a reasonably safe place in which to work, but to make their entire rights of way safe for all kinds of work. Such a requirement would place upon railroad companies of the country a burden quite impossible of performance during the winter time at least, and would entail an expense so stupendous as to render the operation of a railroad thoroughly impracticable.

For the reasons indicated the judgment is affirmed.