# R. C. H. Covington Company v. Masonic Temple Company.

(Decided September 26, 1917.)

## Appeal from Madison Circuit Court.

1. Landlord and Tenant—Independent Contractor.—In making repairs to and improvements upon property, which has been let to

rent, although the work is done gratuitously by the landlord and with the consent of the occupying tenant, the landlord owes a debt of reasonable care to the occupying tenant, and he cannot absolve himself from this liability by employing an independent contractor to do the work, if the work to be done is attended with danger to the tenant.

2. Landlord and Tenant—Condition of Premises—Liability of Landlord.—As a general rule, in the absence from the contract of any undertaking on the part of the landlord, that the premises are in any particular condition, the tenant takes the premises as he finds them, and there is no implied undertaking by the landlord, from the mere fact of letting them to rent, that the premises are fit for the purpose for which they are let, or that they are in any particular condition, but if the landlord knows, at the time of the letting, that the premises are in an unsafe and dangerous condition and such condition is not discoverable by the tenant by the exercise of ordinary care, and the landlord fails to disclose the dangerous condition or conceals it, he is liable to the tenant and to his family, servants and guests for injuries sustained by them, which result from the unsafe and dangerous condition of the premises.

3. Master and Servant—Independent Contractor.—An independent contractor is not a servant of an employer, and his knowledge cannot be imputed to the employer.

4. Master and Servant—Independent Contractor.—A contractor, who contracts to do a piece of work according to his own ideas, or in accordance with plans and specifications previously furnished to him by his employer, and has the right to select and employ his own assistants, the employer having no control over the assistants, and no right to direct the manner of doing the work, further than to require that it shall be done in compliance with the plans and specifications under which it is contracted to be done, and who is answerable to the employer for the final result of the work, only, is an independent contractor.

5. Landlord and Tenant—Condition of Premises—Notice.—If the landlord is notified that the premises are in a dangerous condition and the notice to him is sufficient under all the circumstances to apprise a person of ordinary prudence that the premises are in a dangerous condition, such notice will be regarded as knowledge.

JOHN NOLAND, R. H. CROOKE and WILLIAM L. WALLACE for appellant.

BURNAM & BURNAM and W. R. SHACKELFORD for appellee.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

The appellant, R. C. H. Covington Company, a corporation, instituted this action against the Masonic Temple Company, which is also a corporation. The peti-

tion, with its amendments, contained two paragraphs. In the first paragraph, and the amendments thereto, it claimed that previous to the year, 1910, the partnership of Covington & Banks was the tenant of the appellee, under a lease, by the terms of which it had rented from the appellee and was occupying the lower story of a building as a storehouse, and wherein the partnership was engaged in the business of a merchant; that the lease was for a term of five years, and expired at the end of the year, 1913; and by the terms of the contract it had the right to renew the lease for another period of five years at its expiration; that during the continuance of the lease and in the months of September and October, 1910, at the request of the partnership and in consideration of its promise to pay the sum of two hundred dollars, per year, for each of the unexpired years of the lease, in addition to the rental, that it was then obliged to pay under the lease, the appellee made certain changes and improvements in the structure of the building, among which was the putting in of a steel ceiling in the room embraced by the lease, and the removal of certain cast iron columns in front of the building, which supported the beams which upheld the front wall, and, in their stead, the placing of a steel beam across the front, over the doorway and windows, from one of the side walls to the other, and resting upon these walls for the support of the overhead front wall, and the installation of a more modern and ornamental style of windows in the front of the building. The averment was made, that the appellee in making these improvements so negligently performed the work and negligently used such inferior materials in the work, that the structure of the building was made defective, unsafe and dangerous, which caused the front wall of the building to collapse about four years thereafter, while the same was being occupied by the appellant corporation as the tenant of appellee, as the successor of Covington & Banks, and thereby caused much damage to the goods of appellant then in the building, and the loss of much time in removing the stock and expenses in so doing, and sought a judgment against appellee for such alleged damages. It was further alleged that Benjamin L. Banks, who was one of the members of the partnership of Covington & Banks, and which was the tenant and occupying the building, as such, at the time the improvements were made, died in November, 1913, before the expiration of the lease on December

31, 1913, and presumably as the surviving member of the partnership, Covington, the other partner, occupied the building until the 10th day of February, 1914, when, although Banks was then dead, another lease for the use of the property for a period of five years from the first day of the year, 1914, was entered into between appellee and the partnership of Covington & Banks, and that upon that day or the following day the corporation of R. C. H. Covington Company was organized and the lease was assigned to the corporation, which then occupied the building and conducted the same business which had theretofore been conducted by the partnership of Covington & Banks, until the collapse of the front wall of the building, on the 19th day of September, 1914. It was further alleged that at the time the lease contract was entered into on February 10, 1914, the building was in an unsafe and dangerous condition, which was known to the appellee, the lessor, but of which the lessee did not know, and could not by the exercise of reasonable care have known or discovered; and that the appellee consented to the assignment of the lease to appellant corporation by accepting the payment of the rent from it up to the time of the collapse of the building.

By the second paragraph of the petition, the appellant claimed that after the building had collapsed, that a contract was entered into between it and appellee, by which the appellee agreed that the appellant should occupy the building as a tenant when the building should be made tenantable, until the expiration of the assigned lease, and then had broken such contract by refusing to permit it to again occupy the building and sought damages for such alleged breach of the contract.

The answer traversed all the allegations of the petition and amended petitions, and affirmatively averred, that the changes and improvements made in the building in 1910 were made at the request of Covington & Banks, the then occupying tenant, and the plans and specifications for the improvements were submitted to and approved by Covington & Banks before the improvements were made; and that the plans and specifications were made and the improvements done by a reputable and competent architect, and by reputable and competent contractors, in the selection of which the appellee exercised ordinary care, and that the contractors were independent ones.

The affirmative matter in the answer was controverted by a reply, and upon the issues thus made the trial was entered into.

At the conclusion of all the evidence the court sustained the motion for a peremptory instruction in favor of the appellee as to the causes of action relied upon in the first paragraph of the petition and its amendments, but overruled the motion as to the cause of action set up in the second paragraph. The issue regarding the latter cause of action was submitted to the jury under instructions, to which no objection was made, and the jury having found for the appellee upon that issue, a judgment was rendered dismissing the petition.

Instructions were offered by appellant relating to the issues made by the first paragraph of the petition and its amendments, and by the answer and reply, so far as the latter pleadings referred to the cause of action set out in the first paragraph, but the court refused them.

The filing of grounds and a motion for a new trial followed, which was overruled.

The appellant does not seek a reversal of the judgment as to the cause of action relied upon in the second paragraph of the petition, but complains of the action of the court in taking from the consideration of the jury the matters plead in the first paragraph and its refusal to submit same to the jury under the instructions offered by appellant, or other proper instructions, and the correctness of the court's action in reference thereto is the only question for determination here.

The appellant did not offer any instructions bearing upon the issue made as to the liability of the appellee for alleged negligence in the construction of the changes in the building, or for the use of defective materials in the construction, which resulted in damages to appellant, but now insists that it may be inferred from the fact that the front wall of the building collapsed after four years' time, that it was negligence to remove the columns from each side of the front door, and the placing of a steel beam across the entire front, which made the entire weight of the front wall of the building rest upon the side walls, and that it may, also, be inferred from the same reason that the side walls were insufficient to support the weight upon them, because of defects existing in them at the time the changes were made. Upon the other hand, it is contended for appellee, that it is in nowise liable for any negligence in the construction of the im-

provements, because the uncontradicted evidence shows that it exercised care to select a reputable and competent architect to prepare the plans and specifications necessary for the changes, and competent and reputable contractors, who engaged to do the work in accordance with the plans and specifications, and further, that the architect and contractors were independent ones, and the evidence failed to disclose any negligence or any fact from which negligence could be inferred. It is, however, in this case unnecessary to determine whether there was any evidence tending to show actionable negligence in the construction of the improvements; nor is it necessary to determine whether the facts insisted upon by the appellee constitute a defense for it against such charge of negligence, and these questions are not passed upon for the reason hereafter stated making it unnecessary. It is true, that in making repairs to and improvements upon property, which has been let to rent, although the work is done gratuitously by the landlord, he owes a debt of reasonable care to the occupying tenant, and he cannot absolve himself from the liability by employing an independent contractor to do the work, if the work to be done is attended with danger to the tenant. Michael Bros. v. Billings Printing Co., 150 Ky. 253; Nahm & Friedman v. Register Printing Co., 120 Ky. 485; 24 Cyc. 1116; Wertheimer v. Sanders, 70 N. W. 824. Although, as in the instant case, the tenant requested that the improvements should be made, it could only be considered that it requested or consented that they should be made in an ordinarily careful and prudent manner, and if made in such a negligent and careless manner as to damage the tenant, the landlord is liable to the tenant for the damages he sustains from such recklessness and carelessness. This right of recovery, however, only pertains to the occupying tenant and not to some tenant who may thereafter occupy the premises. It will be observed, that the tenant, in occupancy of the building at the time the improvements were made, was the partnership of Covington & Banks, and the lease under which it held the premises expired several months before the building collapsed. No damages were suffered by the tenant from any negligence or carelessness in the construction of the building. True, it was alleged by the appellant, that the lease under which Covington & Banks held the premises contained a clause, which entitled it to have a renewal of the lease, but this was denied, and there was no proof

to support that contention. When the lease to Covington & Banks expired on the last day of the year, 1913, it was its duty to give possession of the property, if it could not effect another contract for the rental of the property. If the partnership then made a contract for a lease upon the property, it occupied the situation of a new tenant. With the expiration of the lease under which the property was held the rights of the tenant growing out of the lease expired with it, except such as were incident to the tenant's right to the removal of his property. No damages occurred to Covington & Banks while the lease under which it held the property was in existence, and in fact no damages were ever suffered by the partnership. When the lease was made to Covington & Banks on February 10, 1914, the general rule applicable to the liability of a landlord to the tenant for the condition of the premises must necessarily prevail. That general rule, which is of almost universal application, is, in the absence from the contract of any undertaking on the part of the landlord that the premises are in any particular condition, the tenant must and does take the premises as he finds them. There is no undertaking by the landlord, that the premises are fit for the purpose for which they are let, or that they are in any particular condition, to be implied from the mere fact of letting them to rent, but if the landlord knows at the time of the letting, that the premises are in an unsafe or dangerous condition, and such condition cannot be discovered by the tenant by the exercise of ordinary care, and the landlord fails to disclose the dangerous condition or conceals it, he is liable to the tenant, his family, servants and guests for injuries sustained by them, and resulting from the unsafe and dangerous condition of the premises.   If the landlord is without knowledge, at the time of the letting, of any dangerous defect in the premises, he is not responsible for any injuries, which result from such defect. Coke v. Gutkese, 80 Ky. 598; Franklin v. Tracy, 117 Ky. 267; Dia's Admr. v. Ziveigart's Admr., 161 Ky. 651; Baltres v. Heiss, 2 R. 308, 18 A. & E. Ency. (2 Ed.) 215; Halzhaner v. Sheeney, 127 Ky. 129. To sustain the cause of action stated in the first paragraph of the petition and its amendments and which was based upon the knowledge of the landlord, at the time of the letting, of the unsafe and dangerous condition of the premises, it was necessary to show that the building was in a defective and unsafe condition at the time the lease was executed on

the 10th day of February, 1914, and that the defects were such that they could not be discovered by Covington & Banks, by the exercise of ordinary care on their part, and that the appellee knew of the defects at the time and failed to disclose them to the lessee.  The proof shows, that when the improvements were made upon the buildings in 1910 one of the side walls was slightly out of aplomb, and that one of the contractors observed what, he thought, was where the water had been sinking into the brick of the foundation of one of the corners, and thought that probably the corner was not safe, but gave the opinion that the wall was sufficient to sustain the weight of the beam, which supported the front wall. The other contractor stated that while the work was in progress, that in a conversation with Greenleaf, the chairman of the board of trustees of the appellee, that ''I expressed a fear that that corner would not hold, that it was then on false work, but after we took the false work out and let the weight down on the beam, and it seemed to stand all right, I didn't think anything more about it.''  It was offered to be proved by a witness, that while the work of improving the building was in progress, he was passing and heard one of the contractors ask the architect, if he did not think, that the foundation of one of the walls should be re-enforced in some way and the architect replied that he did not think that it was necessary.  The statement of this witness was excluded by the court, to which the appellant excepted.. The president of the corporation, Greenleaf, was dead at the time of the trial.  The uncontradicted testimony showed that the changes in the front of the building were made in the usual and customary way, and in a way approved by competent architects and builders.  The changes made consisted in the taking out of two cast iron posts, on either side of the front door, and instead of three cast iron pieces, which extended, by placing them end to end, across from one side wall to the other, a steel beam was inserted, which supported the front wall. This beam rested upon either wall, and the corners of the walls were covered by a sheet of cast iron.  Expert testimony was heard to the effect, that if the side walls had not been sufficiently strong to have supported the beam with the weight upon it, at the time the improvements were made, the weakness would have developed within two or three weeks.  When the building collapsed, the front wall fell out and carried with it about

twenty feet of one of the side walls. ' The evidence did not disclose any reason for the collapse of the building, beyond the opinion of the architect, that the collapse was caused by water getting under the foundation, or that the walls were undermined. There was no evidence of any undermining. If it should be conceded, that the evidence was sufficient of the building having collapsed because of defects, which arose from the manner of its structure or the unsoundness of the materials in the building, and that the weakness existed at the time of the making of the contract embraced in the lease, to carry the case to the jury upon that question, it was yet necessary to prove a cause of action, that there should be evidence tending to show that the appellee had knowledge of the defects at the time of the letting and concealed or failed to disclose the defects to Covington & Banks, and that the defects were of such character as not to be discovered by the lessee by the exercise of ordinary care in its inspection. The evidence fully sustained the latter contention, that the appellant could not have discovered any dangerous defects by ordinary care, and it does not appear that the appellee could have discovered any defects in the building at the time, any more than the lessee or its assignee, the appellant. It is, however, insisted for appellant, that the contractors, while making the improvements, and the architect, had knowledge of defects in the building, which rendered it unsafe and dangerous, and that they were servants of appellee, and that their knowledge must be imputed to the appellee. It is not clear whether the architect was or was not an independent contractor, but the fact that one of the contractors asked his opinion as to the necessity of re-enforcing one of the side walls and his opinion, when his attention was called to it, that the re-enforcing was unnecessary, fails to show any knowledge upon his part of any defective or unsafe condition of the building at that time, but rather proves the contrary, and it is very clear that he never, at any time, expressed even a doubt of the soundness of the building to the appellee. The most that the evidence shows of the knowledge by the contractors of any dangerous defects in the building was, that before completing the work they entertained doubts of the sufficiency of the side walls, but these doubts seem to have been dissipated before the completion of the work, when they became convinced that their fears were groundless. Any

knowledge possessed by the contractors could not be imputed to the appellee, unless they had imparted such knowledge to it, as the evidence clearly shows that they were independent contractors, and not servants of the appellee. The work was done by them under a written contract, and in accordance with plans and specifications, and they were answerable to the appellee for the result of the work only. An independent contractor is defined to be one who contracts to do a piece of work according to his own ideas, or in accordance with plans previously furnished to him by his employer, and has the right to select his own assistants, the employer having no control over the hands doing the work, and no right to direct the manner of doing the work, further than to require that it shall be done in compliance with the plans and specifications under which it is contracted to be done. Pine Mountain R. R. Co. v. Finley, 117 S. W. 413; Mason & Hoge Co. v. Highland, 116 S. W. 320; King v. Creekmore, 117 Ky. 172; 26 Cyc. 970. True, Burnam, one of the directors of appellee, expressed an erroneous opinion, that the contractors were engaged in making any alterations in the work that appellee might desire; but all the facts in evidence tend to prove the contrary.

The testimony of one of the contractors, that while the making of the improvements was in progress, he expressed a fear to Greenleaf, the chairman of the board of trustees or directors, that one of the corners was not sufficient to sustain the work, is the only evidence that any one's fears upon that subject were brought to the appellee. He expressed no fact, which could be construed into imparting knowledge to Greenleaf, that the building would be unsafe or dangerous after its completion. It has been held, that if the landlord is notified that the premises are in a dangerous condition, and the notice given to him is "sufficient under all circumstances to apprise a person of ordinary prudence that the premises are in a dangerous condition, then such notice will be regarded as knowledge." Andonique v. Carmen, 151 Ky. 249. The statement of the witness is that he merely expressed a fear. He stated no fact, which could be construed as imparting any knowledge upon his part that the building would be dangerously defective when the work was completed. His fear was dissipated before or at the time of the completion of the work. When it is considered that the work was planned by a competent

and reputable architect, and the building showed no signs of weakness from that time until the making of the lease, a period of three and one-half years, and no fact was imparted to Greenleaf, as a reason why the corner was insufficient, and the most that the witness's statement amounted to was a possible difference of opinion between him and the architect, who thought the wall was sufficient, the statement of the witness was, under the circumstances, insufficient to apprise a reasonably prudent man, that the building was in an unsafe or dangerous condition at the time of the making of the lease under which appellant held.

The judgment is therefore affirmed.