## Sabiston's Adm'r v. Otis Elevator Co. et al.

(Decided Nov. 9, 1933.)

PETER, LEE, TABB, KRIEGER & HEYBURN, CARY TABB and H. M. DENTON for appellant.

MERIT O'NEAL for Otis Elevator Co., ROBERT L. PAGE for Rentlinger, receiver of Liberty Bank & Trust Co.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

On September 8, 1931, William R. Sabiston, 13 years of age, was engaged in selling and delivering newspapers in the city of Louisville, Ky. Late in the evening of that day, while delivering newspapers on his regular route, he went to the Southland Apartments to deliver a paper to Dan M. Walker one of his regular

subscribers, who with his family resided at the Southland Apartments. He delivered the paper to Walker, turned and walked in the western part of the building toward the elevator on the third floor. Walker went to a room in his apartment, looked over the headlines a moment or two, delivered the paper to his wife, then started to leave the building from the rear. When he reached the first floor or near its entrance, he heard a commotion and endeavored to find out its cause. Mrs. Leachman, who was in charge of the building as temporary resident manager was on the first floor. Walker went to the first floor where he found Mrs. Leachman and others excited over the same noise he had heard. He and the persons present remained until the city officers were notified and came into the building. They went to the second floor, broke open the elevator door, and discovered Sabiston hanging head down, with one foot in the loop of the wire rope used in the operation of the elevator. When removed by them, he was dead.

The plan and specifications of the apartment house were approved, and the permit for the erection of the elevator was granted by the city building and elevator inspector in October 1926. The building was erected in 1927. It is a four-story structure with seventy apartments. The owner constructed the hoist shaft and the approaches to the elevator. The elevator machinery was manufactured and placed in the hoist shaft by the Otis Elevator Company. The elevator is so constructed and adjusted that it cannot be moved unless the door in the elevator and all of the hoist doors on all four floors are closed. The space between the elevator door and the hoist or wall door is 11 inches, and that between the hoist door and the edge of the elevator is 8½ inches. It is electrically operated by the pushing of a button by those who desire to use it.

The Otis Elevator Company is sued because of its gross negligence in manufacturing and placing the elevator in the hoist shaft when there was so much space between the hoist door and the door of the elevator, all of which it is charged were in violation of sections 1 and 4 of the city ordinance relating to elevators, which provides for a space of 4 inches, where it is 11. It is further charged that the Otis Elevator Company was under contract with the owner to keep the elevator in repair, and that it had negligently permitted the space

between the hoist door and the elevator door to remain and be used as the approach to the elevator.

Adolph Reutlinger, as receiver, is sued because prior to the accident resulting in the death of Sabiston, a foreclosure suit had been brought by the Liberty Bank & Trust Company, trustee, to foreclose a mortgage held by bondholders on the Southland Apartments, and the court had therein appointed him "receiver to take charge and operate, control, preserve and protect and collect the rents from said property."

Reutlinger in turn, as receiver, had employed the Liberty Bank & Trust Company to collect for him the rent on the property.

The Liberty Bank & Trust Company is sued as trustee, and also individually. The basis of the cause of action against Reutlinger, as receiver, and the Liberty Bank & Trust Company, as trustee and individually, is "they allowed said elevator machinery, appliances, gate and doors to be used in such condition that William R. Sabiston was caught or his clothes were caught between the doors entering said elevator shaft on one of the floors of said apartment building, and the door or gate on said elevator." It is averred that the Otis Elevator Company, Reutlinger, as trustee, and the Liberty Bank & Trust Company, as trustee and individually, knew, or by the exercise of ordinary care could have known, of the dangerous condition of the elevator when used with the space between the wall or hoist door, and the elevator door.

Sections 1 and 4 of the city ordinance concerning elevators read:

"No. 1. All elevators, installation of elevators, elevator shafts and elevator machinery in any house, building or other structure in the city of Louisville, shall be constructed and installed in conformity to the rules, regulations and requirements of the safety code for elevators provided by the American Engineering Standards Committee and the Bureau of Standards, and of future modifications of said code. A copy of which is filed and shall be kept filed in the office of the board of public safety."

"No. 4. That the construction of any elevator, elevator shafts or machinery or the installa-

tion of same shall not be commenced in any house, building or other structure in the city of Louisville until a permit has been issued therefor by the elevator inspector and no elevator or elevator machinery shall be put in use until a certificate has been issued by the elevator inspector stating that the elevator is in full compliance with the rules, regulations and requirements of the safety code for elevators, nor until the permit has been issued by the city inspector for the purpose of the elevator in said installation.''

A mere reading of these sections is sufficient to warrant the statement that they clearly and unmistakably recognize and differentiate the duties of the owner of the building in which the elevator is installed, and those of the manufacturer who furnishes and installs the machinery and equipment for its installation within the hoist shaft, constructed by the owner of the building. Their duties and liabilities thereunder are severable.

The Otis Elevator Company traversed the petition as amended and affirmatively alleged that the owner of the building constructed the hoist shaft and wall or hoist doors, necessary to approach the elevator door, four or five years before the death of Sabiston, and that it merely furnished the machinery and appliances and the labor for the installation of the elevator in the hoist shaft and made the electrical connection of the wall or hoist doors with the collapsible door of the elevator, and that it neither approved nor disapproved the arrangement of the structure as it had been made by the owner of the apartment house.

Reutlinger's defense was a denial, accompanied by the affirmative allegation that he had been appointed receiver pendente lite, in the action of the Liberty Bank & Trust Company, as trustee, against Earl C. Carney and others, pending in the Jefferson circuit court, chancery branch, second division, and that he neither constructed the building nor had control over the manner in which it was constructed, and had no knowledge of the space between the doors or its dangerous condition.

The Liberty Bank & Trust Company, as trustee and individually, denied the allegations of the petition

as amended and affirmatively alleged that the property was under mortgage and that it had been designated in the mortgage as trustee for the use and benefit of the holders of the mortgage bonds issued against the property, and that it had no right to enter the building to make alterations or repairs or to manage or control it; that it was expressly provided in the mortgage that the trustees or its agents "shall incur no liability for what it or they might do or attempt to do under the power conferred by the provisions of the mortgage, except in case of its own wanton misconduct"; that the use and occupancy of the building and the right to collect the rents and profits from its operation were expressly reserved to the owner or mortgagor.

These affirmative pleas were controverted. A trial was had before a jury. After the introduction of the evidence in behalf of the administrator, the court peremptorily instructed the jury to return a verdict in favor of the defendants, which it did, and judgment was accordingly entered.

This case is three in one. It requires a separate consideration as to each defendant to determine the right of the administrator to recover and their several liability for the death of Sabiston. There were no eye-witnesses to the tragedy. However, certain facts are not disputed. It is agreed that the hoist shaft or vertical opening in which the elevator operates, the hoist or wall doors and the space between them and the collapsible door of the elevator were constructed by the owner of the building at the time of its erection, and that the Otis Elevator Company merely furnished and placed in the hoist shaft, ready for operation, the elevator machinery and its equipment, making the electrical connection of the same with the hoist or wall door on each floor. It is conceded that the elevator machinery, its equipment, and electrical connection were in perfect mechanical condition at the time Sabiston met his death. Whether it is a passenger elevator is disputed by the parties, but in our view the question is not debatable. It was a passenger elevator, although it was operated by the user himself. It is not disputed that when the hoist door on each floor and the collapsible door of the elevator are closed, without pushing an electric button, neither of them will open and the elevator cannot be operated.

Without determining whether the ordinance, because of the manner in which it refers to the safety code approved by the American Engineering Standards Committee and the Bureau of Standards, controls the right of the estate to recover, and the liability of either of the defendants, it is sufficient to say that the Otis Elevator Company is not liable by reason of either section of the ordinance for the independent acts of the owner of the building in his constructing and leaving the space between the wall or hoist doors and the elevator or the collapsible door of the elevator.

The rule found in text-books and cases defining the liability of the manufacturer, furnisher, or contractor was quoted with approval by this court in Payton's Adm'r v. Childers' Electric Co., 228 Ky. 44, 14 S. W. (2d) 208, 209, from Huset v. J. I. Case Threshing Machine Co. (C. C. A.) 120 F. 865, 61 L. R. A. 303. It reads:

"An act of negligence of a manufacturer or vendor which is imminently dangerous to the life or health of mankind, and which is committed in the preparation or sale of an article intended to preserve, destroy, or affect human life, is actionable by third parties who suffer from the negligence."

Olds Motor Works v. Shaffer, 145 Ky. 616, 140 S. W. 1047, 37 L. R. A. (N. S.) 560, Ann. Cas. 1913B, 689; Ethel L. Farley, Ex'r v. Edward E. Tower Co., 271 Mass. 230, 171 N. E. 639, 86 A. L. R. 941 and annotations.

The fundamental reason for this principle is that public policy demands that the utmost care be required of the manufacturer or vendor of an article inherently dangerous, or that might become so by reason of its use, or because of defective, negligent construction or installation, when put to the use for which it was intended. Payton's Adm'r v. Childers' Electric Co., supra.

The owner of a building who operates a passenger elevator, while not an insurer of the safety of the passengers, is bound to provide and use the best and most improved machinery in general, practical use. His failure to provide guards, doors, and suitable approaches for the protection or safeguard of the passengers is per se negligence. Strobel v. Park, 292 Pa. 200, 140 A.

877, 57 A. L. R. 253. Like duties devolve upon an assignee for the benefit of creditors, a trustee, or executor or others in whom the title or actual possession of property is vested by deed or will. Covington Co. v. Masonic Temple Co., 176 Ky. 729, 197 S. W. 420, L. R. A. 1918A, 436; Davis v. Pacific Power Co., 107 Cal. 563, 40 P. 950, 48 Am. St. Rep. 156; Griffin v. Jackson Light & Power Co., 128 Mich. 653, 87 N. W. 888, 55 L. R. A. 318, 92 Am. St. Rep. 496; Louisville Trust Co. v. Morgan, 180 Ky. 609, 203 S. W. 555, 7 A. L. R. 396.

Also a trustee or his agent in actual possession and control of a building which a statute requires to be equipped according to its provisions, who fails to comply with the requirement of the statute, imposing a penalty on him for his failure so to do, is liable to a third party injured because of the absence of such equipment. Pirtle's Adm'x v. Hargis Bank & Trust Co., 241 Ky. 455, 44 S. W. (2d) 541; Mullins v. Nordlow, 170 Ky. 169, 185 S. W. 825; Louisville Trust Co. v. Morgan, supra. But after it passes into the hands of a trustee who is clothed with authority to exercise the right of actual possession and control, the owner is not responsible for the omissions or acts of the trustee which the owner had no power to prevent. Paducah, T. & A. R. Co. v. Com., 33 S. W. 822, 34 S. W. 1068, 17 Ky. Law Rep. 1161.

The Otis Elevator Company was not the owner of the building, it had neither title nor possession at the time Sabiston sustained his injury. Neither the elevator nor the equipment installed by it was negligently installed. It was not defective. Its use by Sabiston in the way and manner in which it was intended to be used did not cause his injury. The space between the hoist door and the elevator, independent of the manner or method of installing the elevator and its equipment, caused the injury resulting in his death. The negligence of the owner of the building who contracted with the Otis Elevator Company to place the elevator and equipment in the hoist way was the sole cause of his injury and death, in that he negligently failed to prevent the possibility of the accident to Sabiston as a passenger. After the elevator was placed ready for use, and the electric connection completed, the owner by the use of rods attached to the inside of the hoist or wall door as he had constructed it, could have easily re-

duced at a small expense, the space between the door and the edge of the elevator to 4 inches, and thus averted the present charge of negligence, and also thereby fulfilled the requirement of the ordinance of the city. The making, the leaving, and the reducing of the space between the hoist door and the elevator were entirely outside the contract of the Otis Elevator Company and the owner, under which it had furnished and installed the elevator machinery and equipment, and made the electric connections. Chambers v. Slattery, 147 Wash. 538, 266 P. 185, 57 A. L. R. 959. The contrary was not attempted to be proven.

The administrator presents Payton's Adm'r v. Childers' Electric Company, 228 Ky. 44, 14 S. W. (2d) 208, and other cases of like import, as controlling authority. In that case the charge was that the manufacturer negligently constructed and installed an electric crane, a thing imminently dangerous when put to the uses intended, considering the manner in which it was constructed and installed, and that as a result the deceased was killed.

In the pending case no charge is made that the elevator or equipment was defective, or negligently constructed or installed. No act of commission or omission in this respect, of the Otis Elevator Company, is charged to have been the cause of the death of Sabiston. No actionable negligence was proven, nor attempted to be proven against it, other than that the owner of the building constructed the building, the hoist shaft, and the hoist door, with the 11-inch space between the hoist door and the door of the elevator, things not included in the contract of the Otis Elevator Company for the furnishing and installing the elevator. It was the duty of the administrator to establish actionable negligence on the part of the Otis Elevator Company. Judd's Adm'x v. Southern Railway Company, 171 Ky. 832, 188 S. W. 880. This duty was not fulfilled.

The evidence adduced to establish, and the argument pressed to substantiate, the charge of negligence against the Otis Elevator Company might, with like persistence and effectiveness, be offered and urged in an action against the builder or carpenter, who, in accordance with the plan and specifications, erected the wall, made the opening for the door, set the door casing, placed the door therein, to sustain a recovery

against him for the death of Sabiston. To sustain the statement that no cause of action would lie for the death of Sabiston against the builder or carpenter for his performance of the contract with the owner because of the creation of the space between the hoist door and the elevator, needs no authority, logic, or reason. Equally as fallacious is the basis of this action against the Otis Elevator Company for the death of Sabiston. As to Reutlinger, receiver, he was appointed pendente lite, therefore was a mere agent or arm of the court, with no power other than that expressly conferred upon him by the orders of the court. But little discretion was vested in him even in caring for and protecting the property committed to his charge, in its condition at that time. He was without power to incur expenses, except for the indispensable necessities of the building, and then but little discretion for that purpose was in him. Leathers v. Kelling's Trustee, 12 Ky. Law Rep. 92; 3rd Pomeroy's Equity, secs. 1333-1335; Keeney v. Home Insurance Co., 71 N. Y. 396, 27 Am. Rep. 60; Cowdrey et al. v. Galveston & H. R. Co., 93 U. S. 352, 23 L. Ed. 950; Moren v. Ohio Valley F. & M. Ins. Co.'s Receiver, 224 Ky. 643, 6 S. W. (2d) 1091; Marble v. Husbands, 185 Ky. 606, 215 S. W. 435.

He was not a permanent receiver; his duties and powers were entirely different from those of a permanent receiver, or an executor or trustee under a will or deed of trust, vesting him with the title or full control and possession of property. A receiver pendente lite does not represent nor stand in the place of the owner of the property committed to his custody by the order of the court. He is an indifferent person as to the parties to the action, and represents neither of them, but only the court appointing him. His appointment does not supersede the authority of the owner, except so far as the care and custody of the property actually committed to his charge are inconsistent with those of the owner. The owner still continues free and unfettered in his right of ownership subject to the rights conferred on the receiver by the orders of the court. In the present case the sale had not been confirmed. Therefore, the title was in the owner, and except for the appointment of the receiver to take charge of them, he was entitled to the rents, issues, and profits arising from the property, until the sale was confirmed by the court.

Noel v. Harper, 170 Ky. 657, 186 S. W. 503; Cockrill v. Louisville & N. R. Co., 176 Ky. 148, 195 S. W. 435; Civil Code of Practice sec. 299, and annotations. Accordingly, it has been held that the appointment of a permanent receiver of a corporation does not dissolve the corporation, but that the stockholders may elect directors, and otherwise carry on, subject to the powers of the receiver. State v. Merchant, 37 Ohio St. 251; Kincaid v. Dwinelle, 59 N. Y. 553; Pringle v. Woolworth, 90 N. Y. 502.

Where property is committed to the charge of a receiver, whether pendente lite or permanent, and he personally commits a tort and thereby injures a third party, he is individually liable (Davis v. Duncan [C. C.] 19 F. 477); but if he omits to perform or performs an official act within the scope of his authority and in line of his duties as receiver, and thereby injures another, any judgment recovered therefor must be against him officially, to be paid out of the funds in his hands. McNulta v. Lochridge, 141 U. S. 327, 12 S. Ct. 11, 35 L. Ed. 796.

Where a receiver, a trustee, or an executor, or even a purchaser, takes control and possession of real estate after the creation of a condition thereon by the owner, knowledge of the existence of the condition and its harmful effect is indispensibly necessary to render the former liable for injury arising therefrom after his taking possession, to a tenant, invitee, or licensee. Daniels v. St. Louis & S. F. R. Co., 36 Okl. 421, 128 P. 1089, 50 L. R. A. (N. S.) 929; Leahan v. Cochran, 178 Mass. 566, 60 N. E. 382, 53 L. R. A. 891, 86 Am. St. Rep. 506; Lamb, Receiver v. Roberts, 196 Ala. 679, 72 So. 309, L. R. A. 1916F, 1018; Martin v. Chicago, R. I. & P. R. Co., 81 Kan. 344, 105 P. 451, 27 L. R. A. (N. S.) 164.

Expressive of this principle is a note in 86 Am. St. Rep. 510, and also secs. 456 and 457, Joyce on Nuisances. See notes to Daniels v. St. Louis & S. F. R. Co., 50 L. R. A. (N. S.) 929, and Chicago, R. I. & P. Ry. Co. v. Martin, 27 L. R. A. (N. S.) 164.

Measured by this principle, even if Reutlinger, as receiver, after his appointment, had in fact assumed actual control and possession of the apartment building, knowledge of the existence of the space between the

hoist door and the elevator and its probable danger to passengers using the elevator was a prerequisite to the right of a passenger injured thereby to recover of the receivership. The evidence is uncontradicted that after his appointment he did not take actual control and possession of the building, but did no more than merely direct the Liberty Bank & Trust Company to collect and account to him for the rents of the apartments. If his nonaction in this respect was not a full discharge of his duties under the orders of the court, of course, any interested party to the action would have been thereby furnished a ground of complaint against him, by proper motion. But his nonaction in this respect did not render the receivership liable to the estate of Sabiston for an injury sustained as the proximate result of the harmful condition of the property existing before it was committed to his care by the court, and of which he had no knowledge. Except by an order of court, as receiver, he was without authority to expend the funds in his hands to alter, change, or reconstruct any portion of the building to remedy the condition of the approach to the elevator. Moren v. Ohio Valley Fire & Marine Insurance Company's Receiver, 224 Ky. 643, 6 S. W. (2d) 1091; Cowdrey et al. v. Galveston H. & H. R. Co., 93 U. S. 352, 23 L. Ed. 950.

We are convinced that the evidence of the administrator does not meet the requirements in such cases as to the receiver. The reasons assigned and the authorities cited in the discussion of the administrator's right to recover of the receiver control his right to recover of the Liberty Bank & Trust Company, as trustee and individually. We therefore refrain from further consideration of the issues as to it, except to say Reutlinger testified that he merely authorized the Liberty Bank & Trust Company to collect and account to him for the rents of the apartments, and no other authority or right was exercised by it over the property. It is not shown that it had any other duty or right respecting the property, or that it had knowledge of the existence of the condition of the building, and that there was danger therefrom in the use of the elevator by passengers.

It is a familiar rule that contributory negligence will never be presumed. Cox's Adm'r v. Cincinnati, N. O. & T. P. R. Co., 238 Ky. 312, 37 S. W. (2d) 859. A

concomitant of this rule is that in every case the plaintiff charging negligence must establish, not that the negligence charged might have been, but was, the proximate cause of his injury.

We have assumed, thus far, that the evidence made a prima facie case in behalf of the administrator; that it was the duty of those in actual possession and control of the building to do all that human care and foresight could reasonably suggest in view of the mode of the conveyance adopted to safeguard the passengers using the elevator against accidents; and that the existence and use of the space between the hoist door and the elevator door were proof of negligence. It is proper to observe that Sabiston was familiar with the elevator, its operation, and the existence of the space between the doors, and was a boy of average intelligence. It was easy for him to see that it was unsafe for him to occupy this space while the elevator was in motion. And exactly why he was in this space with the doors closed, or whether he was using the elevator in the way and for the purpose for which it was intended, or whether he was experimenting with it, and, while so doing, set it in motion in some manner, or another on the fourth floor did so, is, under the proven facts, mere conjecture, surmise, or speculation, neither of which is sufficient to authorize the submsision of a case to the jury or to sustain a verdict.

Hypothetical questions were propounded to certain witnesses who were experienced and trained in the manufacturing and installing of elevators, calling for their opinions as to how the tragedy happened, to which objections were sustained, and the questions not answered.

It is not very clear that the experience and training of the witnesses in the line of their profession would qualify them to answer the hypothetical questions propounded to them. Aside from this, the questions called for answers merely giving a theorem which they might have in their minds, without adequate knowledge of the facts, imparted to them by the questions. Louisville & N. R. Co. v. Molloy's Adm'x, 122 Ky. 219, 91 S. W. 685, 28 Ky. Law Rep. 1113; Newport News & Mississippi Valley Co. v. Wilson, 16 Ky. Law Rep. 262; City of Providence v. Hunter, 231 Ky. 72, 21 S. W. (2d) 135.

The objectionable questions were answered by some of the witnesses out of the hearing of the jury. Considering the case with their answers admitted with the evidence adduced, we are convinced that the administrator failed to prove the negligence charged, with sufficient certainty and definiteness to authorize the submission of the case to the jury, and that the court properly directed a verdict for the defendants.

The judgment is affirmed.